# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GENERAL INSURANCE COMPANY OF AMERICA | * * * |
| v. | * Case No. WMN-12-3307 |
| THE WALTER E. CAMPBELL COMPANY, INC. et al. | * * * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

This insurance coverage dispute arises from the Walter E. Campbell Company's (WECCO) substantial involvement in asbestos personal-injury litigation. Before the Court is (1) a motion to dismiss the complaint or, in the alternative a motion abstain from exercising jurisdiction under the Declaratory Judgment Act or pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), and (2) a motion to dismiss cross-claims. ECF Nos. 40 & 104. Both motions were filed by WECCO, which is presently a defendant, and both are fully briefed.

Upon consideration of the papers, facts, and applicable law, the Court determines that (1) no hearing is necessary, Local Rule. 105.6, and (2) both motions will be denied in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

WECCO is a Maryland corporation with its principal place of business in Highland, Maryland. For several decades, WECCO

engaged in the business of handling, installing, disturbing, removing and selling asbestos-containing insulation materials. Between 1963 and 1985, WECCO purchased numerous primary and excess liability insurance policies from multiple insurers.

Since the 1990s WECCO has routinely been named in personal-injury asbestos lawsuits. As a result, WECCO has had to seek coverage from its insurers. Hundreds of claims have been resolved for a combined value stretching in to the tens of millions of dollars. Still, hundreds of additional cases remain pending.

WECCO and its insurers dispute the policy provision under which these claims fall. WECCO asserts that they come under the general liability provisions of the policies which are subject to per occurrence limits, but the number of occurrences is not limited. The insurers, on the other hand, have taken the position that the claims come under the "products hazard" or "completed operations hazard" portions of the policies which are subject to aggregate limits of liability.

The Complaint in this case, ECF No. 1, was filed by General Insurance Company of America, Inc. (General), one of WECCO's insurers, and invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. In addition to WECCO, General

named as Defendants, WECCO's other solvent insurers.[1] It also named, as a Defendant, the Maryland Property & Casualty Insurance Guaranty Corporation (PCIGC). PCIGC is a non-profit corporation created by the Maryland General Assembly which stands in the shoes of insolvent insurers to pay claims for which those insurers would have been liable, subject to the applicable policy limits and other restrictions imposed by the statutory scheme. After filing its own motion to dismiss, ECF No. 19, but before it was fully briefed, PCIGC was voluntarily dismissed by General. ECF No. 83. General seeks two forms of relief, (1) declaratory judgments, and (2) contribution from three of WECCO's other insurers that General alleges have not paid anything on WECCO's asbestos-related claims.

## II. DISCUSSION

### A. Motion to Dismiss the Complaint, ECF No. 40.

#### 1. The Court Has Subject Matter Jurisdiction

WECCO's motion to dismiss the Complaint is premised on an argument that this Court lacks subject matter jurisdiction. It

---

[1] Those other insurers include The Continental Insurance Company, National Indemnity Company, Federal Insurance Company, United States Fire Insurance Company, The Hartford Financial Services Group, Inc., St. Paul Fire & Marine Insurance Company, and Pennsylvania Manufacturers Association Insurance Company. Some of these parties have filed motions to join the oppositions filed to these motions. See ECF Nos. 119 (by Pennsylvania Manufacturers Association Insurance Company), 128 (by United States Fire Insurance Company), 129 (by Federal Insurance Company). The Court will grant the motions for joinder.

is an argument that WECCO makes in two steps.  First, WECCO asserts that the parties to this action should be realigned such that WECCO should be identified as the plaintiff and General as a defendant along with WECCO's other insurers.  Second, WECCO argues that PCIGC is a necessary and indispensable party under Fed. R. Civ. P. 19 and, once it is joined in this action, diversity is destroyed because both WECCO and PCIGC are Maryland corporations.  Because WECCO's argument fails at both steps, the Court will deny WECCO's motion to dismiss for lack of subject matter jurisdiction.

The starting point on the question of realignment is Indianapolis v. Chase National Bank of City of New York, 314 U.S. 63 (1941).  See also 13E Charles Alan Wright & Arthur Miller & Edward H Cooper, Federal Practice and Procedure § 3607 (3d ed. 2009).  There, the Supreme Court held that "to sustain diversity jurisdiction there must exist an 'actual,' 'substantial,' controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side." Indianapolis, 314 U.S. at 69 (internal citations omitted).  In matters where diversity jurisdiction has been invoked, it is the court's obligation "to look beyond the pleadings and arrange the parties according to their sides in the dispute."  Id. (internal quotations omitted).  "Whether the necessary 'collision of

4

interest' exists . . . must be ascertained from the 'principal purpose of the suit,' and the 'primary and controlling matter in dispute.'"  Id. (internal citations omitted).

Relying on Indianapolis and applying what has been dubbed the "principal purpose test," this Court, in U.S. Fidelity & Guaranty Company v. A & S Manufacturing Company, Inc., 839 F. Supp. 347 (D. Md. 1993) (Fidelity I) (Hargrove, J.), realigned the parties where an insurer brought suit against its insured and the insured's other insurers for a declaratory judgment after the other insurers refused to indemnify the insured. Through cross-claims and counterclaims the insurers disputed the proper allocation of costs among themselves.  The Court, however, determined that those disputes were "merely ancillary to the central issue of the duty to indemnify." Id. at 351. That decision was affirmed by the Fourth Circuit which held that "[t]he dispute among the insurers is secondary to whether the insurers are liable to [the insured] and is hypothetical until the insurers' liability is determined.  The potentially substantial, though not principal, controversies that [the plaintiff] raises are subsumed in the primary issue of the insurers' liability to [the insured]." U.S. Fidelity & Guar. Co. v. A & S Manufacturing Co., Inc., 48 F.3d 131, 134 (4th Cir. 1995) (Fidelity II).

5

The proper alignment of the parties is determined by a review of the pleadings and the nature of the controversy. Id. Here, realignment is not warranted. The Complaint reveals that General's claim for contribution is not contingent on the outcome of its request for declaratory judgments. In contrast to Fidelity I and Fidelity II, and cases from other courts where the parties have been realigned, the Complaint here presents two distinct, but balanced, claims. See U.S. Fidelity & Guar. Co. v. Thomas Solvent Co., 955 F.2d 1085, 1090-91 (6th Cir. 1992) ("if the insurers are held not to owe a duty to indemnify any of the Thomas Parties, then the issue of contribution is moot"). The Court cannot say, therefore, that one is primary and the other is secondary.[2]

---

[2] It is also worth noting that a number of the Defendant Insurers have asserted counterclaims against General and cross-claims against one another. See ECF Nos. 32, 39, 98. Although the Second Circuit does not employ the primary purpose test, the Court finds its opinion in Maryland Casualty Co. v. W.R. Grace & Co., 23 F.3d 617 (2d Cir. 1993), to be helpful. There the court noted that similar animosity among the insurers would counsel against realignment under the primary purpose test because "[r]ealignment hinges on those issues that divide the parties, not on those on which they agree." Id.; see also Am. Motorists Ins. Co. v. Trane Co., 657 F.2d 146, 151 (7th Cir. 1981) (citing C. Y. Thomason v. Lumberman's Mut. Cas. Co., 183 F.2d 729 (4th Cir. 1950)).

Although WECCO's Motion to Dismiss is defeated by the Court's decision not to realign the parties, it is also necessary to consider whether PCIGC is a party that must be joined. Fed. R. Civ. P. 19 sets forth a two-step inquiry which examines, under Rule 19(a), whether the party is necessary and, if so, whether it is indispensable pursuant to Rule 19(b). Am. Gen. Life & Acc. Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005); see also Schlumberger Indus. v. Nat'l Sur. Corp., 36 F.3d 1274, 1285-86 (4th Cir. 1994) ("Only necessary persons can be indispensable, but not all necessary persons are indispensable."). The decision to join or not join a party is committed to the discretion of the court, and it is the party seeking joinder – here, WECCO - that has the burden of establishing that the party sought to be joined "is needed for a just adjudication." Wood, 429 F.3d at 92 (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1609 (3d ed. 2001)).

WECCO has not met its burden of establishing that PCIGC is a necessary and indispensable party. It relies on Schlumberger, another insurance dispute, where the district court denied the insured's motion to dismiss. Similar to WECCO's motion here, the insured's motion in Schlumberger was premised on its argument that certain of its insurers were required to be joined as necessary and indispensable parties, but that joining those

insurers would destroy complete diversity. 36 F.3d at 1285.
The Fourth Circuit reversed the district court reasoning that

> there is a practical possibility for prejudice to [the insured] that is not present in cases where the insurers cover the same liability for the same time period: [the insured] could be 'whipsawed' . . . and wind up with less than full coverage even though it was legally entitled to full coverage.

Id. at 1286. The Fourth Circuit saw the potential for "whipsaw" in three required inquiries in the coverage dispute: (1) whether, as a matter of law, the insurance policies provided coverage for the alleged expenses, (2) assuming coverage was provided what, as a matter of law, was the "trigger" for that coverage to attach, and (3) when, as a matter of fact, did the trigger occur. Id. In light of the prejudice resulting from the potential for whipsaw, the court concluded that complete relief could not be adjudicated in the absence of some of the insurers. Id. at 1287. WECCO suggests that the court's holding in Schlumberger is determinative of its motion here.

WECCO is incorrect, however. PCIGC, unlike the parties that the insured sought to join in Schlumberger, is not simply another insurer. Rather, PCIGC is a guarantor and a creature of statute, and its ability to pay claims, as well as the amount it can pay on covered claims, is limited by those provisions.[3] See

---

[3] Indeed, the contingencies imposed on PCIGC's obligation to pay claims were precisely the basis for PCIGC's own motion to dismiss prior to its voluntary dismissal by General. See ECF

8

Md. Code Ann., Ins. § 9-301 et seq.; see also Igwilo v. Prop. & Cas. Ins. Guar. Corp., 750 A.2d 646, 650 (Md. Ct. Spec. App. 2000). These limitations are simply too much to be, as WECCO claims, "a distinction without a difference." ECF No. 109 at 6. Instead, the additional layer of limitations imposed on PCIGC's payment obligations creates a distinction that is great enough to limit the potential for whipsaw in this case. Other courts have found as much as well. For example, in UTI Corp. v. Fireman's Fund Insurance, Co., 896 F. Supp. 389 (D.N.J. 1995), the court held that the Pennsylvania Insurance Guaranty Association (PIGA), an entity analogous to PCIGC in the present case, was not a necessary party. Indeed, the court found that limitations on PIGA's coverage obligations minimized the potential for prejudice to the parties already in the case. Id. at 395 (explaining limitations imposed by PIGA's governing statute including exhaustion of available coverage, and non-duplication of recovery).[4] As the court in Schlumberger noted,

---

No. 19. WECCO suggests that General's naming PCIGC as a defendant in its Complaint reveals a belief that PCIGC had potential liability in this action. ECF No. 109 at 7. But, whether General believed PCIGC was liable to it has no bearing on WECCO's argument claiming that it, not General, will be prejudiced if PCIGC is not joined.

[4] WECCO argues that, at this stage of the litigation, it would be improper for the Court to engage in a "rigorous examination of the statutory requirements" at play and, in any event, General has not shown that WECCO has not satisfied those requirements. ECF No. 109 at 8. This argument, however, turns the parties'

9

determinations of whether a party is necessary and indispensable require the court to "consider the practical potential for prejudice in the context of the particular factual setting presented by the case at bar." 32 F.3d at 1286. In this context, the Court finds only a very limited potential for prejudice to WECCO and, as a result, determines that PCIGC is not a necessary party to this action.[5]

### 2. The Court Will Reserve on the Issue of Abstention

In the alternative, WECCO asks the Court to abstain from exercising jurisdiction either under the Declaratory Judgment Act or under the doctrine articulated in Colorado River, supra at 1, pending the resolution of the motion for remand in a parallel case filed by WECCO which is now before the United States District Court for the District of Columbia. ECF No. 40-1 at 7-14. General responds by arguing that the Court should

---

burdens on their head and does not accurately reflect the nature of the inquiry required. As noted above, supra at 7, it is WECCO as the party seeking joinder, who must establish that PCIGC's presence is required for a just adjudication, and this inquiry necessarily includes some showing that the statutory requirements are met. WECCO has not yet satisfied that burden.

[5] Throughout the briefing on the two pending motions there has been some mention of WECCO's ability to protect its interests by impleading PCIGC. WECCO has taken the position, however, that impleading PCIGC would be improper under the terms of Fed. R. Civ. P. 14(a). ECF No. 130 at 7-8. The Court will not speculate as to the viability of claims which are not presently before it, but it suffices to say that Rule 14 or Rule 13(h) in combination with Rule 20, provide WECCO at least a colorable means of seeking relief from PCIGC.

10

exercise jurisdiction under the first-to-file rule because the two cases involve the same parties and the same issues, but this case was filed two months before WECCO filed its case in the District of Columbia. "The first-to-file rule refers to the doctrine that when the same party or parties have filed similar litigation in separate federal fora, the matter that was filed first should proceed, and the later-filed action should be stayed, transferred, or enjoined." Butler v. DirectSat USA, LLC, 800 F. Supp. 2d 662, 665 (D. Md. 2011). This rule is not to be disregarded lightly. Neuralstem, Inc. v. StemCells, Inc., 573 F. Supp. 2d 888, 900 (D. Md. 2008). WECCO does not respond to General's argument directly, but in its briefing on its motion to dismiss cross-claims asks that the Court refrain from ruling on this issue (and the abstention issues in general) until the motion for remand currently pending before the District of Columbia court is resolved. ECF No. 130 at 10. Because whether that case is proceeding in federal court or in state court impacts the Court's analysis of the first-to-file and abstention issues, the Court will reserve on those issues until the District of Columbia court rules on WECCO's pending motion for remand. WECCO will be ordered to notify the Court of such a ruling by the District of Columbia court. In the meantime, the stay of discovery and further motions practice presently in place, see ECF No. 127, will continue.

### B. Motion to Dismiss Cross Claims

WECCO has also moved to dismiss cross-claims filed against it by its co-defendants. ECF No. 104. Its motion, as well as the opposition filed by Defendant St. Paul Fire and Marine Insurance Company, ECF No. 118, advance the same arguments already addressed above. Therefore, the Court will deny WECCO's motion to the extent it seeks dismissal of the cross-claims and will reserve on WECCO's request that the Court abstain from exercising jurisdiction.

### III. CONCLUSION

For the foregoing reasons WECCO's Motion to Dismiss and Motion to Dismiss Cross-Claims will be denied, in part. A separate Order will issue.

                                      /s/
                         William M. Nickerson
                         Senior United States District Judge

June 11, 2013