# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GENERAL INSURANCE COMPANY OF AMERICA | * * * |
| v. | * Case No. WMN-12-3307 |
| THE WALTER E. CAMPBELL COMPANY, INC. et al. | * * * |

* * * * * * * * * * * *

## MEMORANDUM & ORDER

This case involves an insurance coverage dispute between The Walter E. Campbell Company (WECCO) – a company which for decades engaged in the business of handling, installing, disturbing, removing, and selling asbestos-containing insulation materials – and several of its insurers.[1] This suit was filed in this Court by one of those insurers, the General Insurance Company of America (General), on November 9, 2012. As initially filed, the suit named the Maryland Property & Casualty Insurance Guaranty Corporation (PCIGC) as a defendant, in addition to other solvent insurers of WECCO. PCIGC is a non-profit corporation created by the Maryland General Assembly which, in certain circumstances, can stand in the shoes of insolvent insurers to pay claims for which those insurers would have been liable. After PCIGC filed its own motion to dismiss, ECF No.

---

[1] The factual and procedural background for this case is set out with some additional detail in this Court's previous memorandum. ECF No. 131.

19, but before that motion was fully briefed, PCIGC was voluntarily dismissed by General on February 8, 2013.  ECF No. 83.

One month before that dismissal, on January 7, 2013, WECCO filed a parallel action in the Superior Court of the District of Columbia raising essentially the same issues as raised here. <u>The Walter E. Campbell Co. v. Gen. Ins.</u>, Civ. No. 13-109 (D.C.) (the D.C. Action).  The D.C. Action was subsequently removed to the United States District Court for the District of Columbia. After filing this parallel action, but while it was still pending in the Superior Court, WECCO filed a motion to dismiss in this case asking this Court, <u>inter alia</u>: to find that PCIGC was an indispensable party in this action; to realign the parties so that WECCO would be deemed the plaintiff and the other parties, including PCIGC, would be deemed defendants; and then to dismiss this action for lack of diversity jurisdiction because WECCO and PCIGC are both citizens of Maryland for purposes of diversity.  In ruling on that motion in a Memorandum and Order dated June 11, 2013, this Court found that realignment was not necessary and that PCIGC was not a necessary party in this action.  ECF Nos. 131, 132.

In its motion to dismiss, WECCO also requested that this Court abstain from exercising jurisdiction over this dispute

under either the Brillhart/Wilton[2] doctrine or the Colorado River[3] doctrine. WECCO argued that, under either doctrine, this Court should defer to the Superior Court of the District of Columbia and stay this action. On February 8, 2013, shortly after WECCO filed its motion in this case, the D.C. Action was removed to federal court and General, joined by some of the other Defendants, responded to WECCO's abstention argument by suggesting that, now that the two actions are both proceeding in federal courts, the "first-to-file" rule should dictate that this case go forward, and not the D.C. Action. WECCO countered that it had filed a motion to remand the D.C. Action back to the Superior Court which, if granted, would negate the force of the first-to-file rule. In its June 11, 2013, Memorandum and Order, this Court reserved on the abstention issue, opining that whether the D.C. Action proceeded in the state or the federal court might have some impact on this Court's analysis of first-to-file and abstention issues.

On August 22, 2013, General informed this Court that its motion to remand the D.C. Action to the Superior Court was granted on August 13, 2013. This Court then requested that the

---

[2] Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942), and Wilton v. Seven Falls Co., 515 U.S. 277 (1995).

[3] Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).

parties supplement their previous submissions on the abstention issues in light of the remand. The parties did so. ECF No. 136 (General's)[4] and ECF No. 142 (WECCO's). On December 31, 2013, one of the defendant insurers in the D.C. Action notified this Court that the Superior Court had dismissed PCIGC from the D.C. Action for lack of personal jurisdiction. ECF No. 144. With the dismissal of PCIGC, the defendant insurance companies in the D.C. Action again removed the action to the federal district court on the ground that there was now complete diversity of citizenship. The insurance companies now argue to this Court that, with that re-removal, the force of the first-to-file rule has been re-invigorated. Id.

WECCO immediately responded that it has filed another motion to remand, arguing that this second removal was improper because it was an involuntary dismissal that created diversity jurisdiction. ECF No. 145. WECCO again urges this Court to defer ruling on the abstention issues until its motion to remand is decided. For the reasons that follow, this Court concludes that it need not wait any longer to resolve the abstention

---

[4] Several other Defendants filed motions for joinder in General's supplemental memorandum. ECF Nos. 137 (Pennsylvania Manufacturers Association Insurance Company's), 138 (United States Fire Insurance Company's), and 139 (St. Paul Fire & Marine Insurance Company's). These motions for joinder will be granted.

4

issues, that it will exercise its jurisdiction, and this case will go forward.

The parties disagree over which abstention doctrine is even potentially applicable in this situation. General and the other insurers argue that the abstention question is governed by the more exacting Colorado River "exceptional circumstances" test. WECCO argues that the question is governed by the much more permissive Brillhart/Wilton analysis. The Court finds that it would not abstain even under the more permissive Brillhart/Wilton doctrine and, therefore, will only discuss the applicability of that doctrine.

The factors considered under Brillhart/Wilton are as follows:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 494-95 (4th Cir. 1998). Starting with that last factor first, both sides of this dispute self-righteously accuse the other side of forum-shopping. Those accusations ring somewhat hollow in that it is

5

clear that both sides went shopping and all of the procedural maneuvering outlined above was driven by the insurers' wish to have the case decided under Fourth Circuit precedent, which they perceive to be favorable to their position, and WECCO's desire to avoid that same precedent.[5]

That General was shopping for a favorable forum is evidenced by the fact that it brought suit in this Court as opposed to a Maryland state court.  While the choice of law has not been finally decided, it would appear that Maryland law will apply to the majority of the claims and issues.  General certainly could have filed in a Maryland state court and had a Maryland state court decide an issue of Maryland state law.  Had it done so, PCIGC would still be a part of this action. Instead, General filed here seeking to ensure the application of the Fourth Circuit's interpretation of Maryland law.  To obtain and retain this forum, the claims against PCIGC were sacrificed.

On the other side, WECCO, a Maryland company, filed suit in a state court, but not the state court which would have been the more natural choice.  In WECCO's view, "the District of Columbia courts apparently have yet to decide the issue of insurance law

---

[5] That precedent is In re Wallace & Gale Co., 385 F.3d 820 (4th Cir. 2004) (applying Maryland state law), and the cases following that decision, including Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Porter Hayden Co., Civ. No. 03-3408, 331 B.R. 652 (D. Md. 2005).

6

at the heart of this dispute," ECF No. 40-1 at 9, and it is on that clean slate that WECCO hoped the District of Columbia court would reach a different result than that reached by the Fourth Circuit. Like General, WECCO certainly could have filed suit in a Maryland state court, and, like General's choice of forum, WECCO's choice resulted in losing jurisdiction over PCIGC.

Turning to the first Brillhart/Wilton factor - whether the state court has a strong interest in resolving the legal issues raised in this case - there is no reason why a District of Columbia court, be it federal or state, would have a greater interest than that of this Court in resolving these issues. On this factor, WECCO notes that it began its operations in the District of Columbia and suggests that many of the underlying asbestos claims to which the insurance coverage at issue relates were filed and are pending in the District of Columbia. ECF No. 142 at 4 (citing Aff. of Michael Gibbons, WECCO's former President). WECCO then proceeds to name a dozen or so D.C. projects at which WECCO is alleged to have caused harm.

General counters that, while WECCO may have started out in D.C., it has maintained its headquarters in Maryland since at least the 1960s. ECF No. 136 (citing Aff. of Fred Peckitt, General's claims manager). Furthermore, the policies with at least four of the defendant insurance companies were delivered to Maryland and WECCO's insurance agent for these policies was

7

located in Maryland.  More significant is the fact that, of the approximately 750 asbestos claims currently pending against WECCO, over ninety percent are pending in Maryland, and the "overwhelming majority of past asbestos claims against WECCO have also been filed in Maryland."  Peckitt Aff. ¶ 8.  Thus, a District of Columbia court's interest in resolving coverage issues related to predominantly Maryland lawsuits would be tenuous, at best.

On the second factor, WECCO argues that "the District of Columbia is in a position to resolve these claims more efficiently and completely, as they involve questions of state law and include PCIGC, the party dismissed by General in this action."  ECF No. 142 at 5.  It is difficult to see how it is more efficient for a D.C. court to resolve matters of Maryland law which WECCO asserts D.C. courts have never reached, than for this Court to resolve issues it has previously confronted and addressed.[6]  As for completeness, this Court was concerned that PCIGC's presence in the D.C. Action, and absence in this action,

---

[6] WECCO suggests that, assuming Maryland law applies to at least some of the coverage issues raised here, a District of Columbia state court is "perfectly capable of applying that law."  ECF No. 142 at 5 (citing Asch v. Taveres, 467 A.2d 976, 979 (D.C. 1983)).  While true, the Fourth Circuit has recognized that a particular state's interests are "better served by having the coverage issues decided by a federal court sitting in [that state], rather than in a state court sitting in [a different state]."  Great Am. Ins. Co. v. Gross, 468 F.3d 199, 209 (4th Cir. 2006).

8

offered the D.C. Action the opportunity to resolve this dispute more completely. With PCIGC's absence now from both actions, however, this factor no longer points to abstention.

Back to the issue of efficiency for a moment, this Court notes that, while both of these cases have been pending now for more than a year, neither case has progressed beyond the preliminary stage due to the procedural jockeying of both sides. Thus, going forward in this action would not result in any duplication of effort already expended in the D.C. Action. The convenience of one forum over the other, which goes more to the applicability of <u>Colorado River</u> abstention but which also implicates efficiency, favors neither forum. The courts are geographically close enough that no party or witnesses would suffer any greater inconvenience or inefficiency in trying these issues in one court or the other.

WECCO's argument on the third factor also relied primarily on PCIGC's continued presence in the D.C. Action. WECCO argues that "continuation of this case will result in parallel adjudications with the possibility of inconsistent and incomplete adjudications in this action (given the absence of PCIGC)." <u>Id.</u> With the dismissal of PCIGC from the D.C. Action, both adjudications will be equally incomplete. As to the possibility of inconsistent adjudications in parallel proceedings, if the D.C. Action remains in federal court,

PCIGC's dismissal eliminates any reason not to follow the first-to-file rule. If the D.C. Action finds its way back to the Superior Court, that court certainly could stay that action to avoid an inconsistent result. See Thomas v. Disabled Am. Veterans Ass'n, 930 A.2d 997, 1000-01 (D.C. 2007) (noting that "[t]here is, of course, no general requirement that the Superior Court defer to the District Court when related actions are pending in both courts, but it often will be prudent and efficient to do so, especially when the federal court was the first to acquire jurisdiction").

For these reasons, WECCO's request that this Court abstain from exercising jurisdiction over this action will be denied.[7] Accordingly, it is this 16th day of January, 2014, by the United States District Court for the District of Maryland, ORDERED:

(1) That the stay of this action is hereby lifted;

(2) That the motions for joinder filed by Pennsylvania Manufacturers Association Insurance Company, ECF No. 137, United States Fire Insurance Company, ECF No. 138, and St. Paul Fire & Marine Insurance Company, ECF No. 139, are GRANTED;

---

[7] Before this case was stayed, Defendant The Hartford Financial Services Group Inc. filed a motion for leave to file counterclaims and crossclaims, ECF No. 113, and a motion for leave to file a third party complaint. ECF No. 114. Those motions were unopposed and will be granted. As soon as the third party defendant is served and answers the Complaint, a scheduling order will be issued.

(3) That Defendant Hartford Financial Services Group Inc.'s Motion for Leave to File Counterclaims and Crossclaims, ECF No. 113, and Motion for Leave to File a Third Party Complaint, ECF No. 114, are GRANTED and the Counterclaims, Crossclaims and Third Party Complaint are deemed filed as of the date of this Order; and,

(4) That the Clerk of the Court shall transmit a copy of this Memorandum and Order to all counsel of record.

_____/s/_____
William M. Nickerson
Senior United States District Judge