IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GENERAL INSURANCE COMPANY OF     *
AMERICA     *
    *
       v.     *   Case No. WMN-12-3307
    *
THE WALTER E. CAMPBELL COMPANY,   *
INC. <u>et al.</u>     *
    *

   *    *    *    *    *    *    *    *    *    *    *    *

**<u>MEMORANDUM</u>**

Before the Court are the following motions: a Motion to Certify Questions of Law to the Court of Appeals of Maryland filed by the Walter E. Campbell Company, Inc. (WECCO), ECF No. 219; a Motion for Partial Summary Judgment, filed by United States Fire Insurance Company (U.S. Fire), The Hartford Financial Services Group, Inc. (The Hartford),[1] St. Paul Fire and Marine Insurance Company (St. Paul), Continental Insurance Company (Continental), National Indemnity Company (National Indemnity), and Plaintiff General Insurance Company of America (General Insurance) (collectively, Certain Insurers), ECF No. 220; WECCO's motion to strike the evidence offered in support of Certain Insurers' summary judgment motion, ECF No. 223; a Motion for Voluntary Dismissal filed by General Insurance and WECCO,

---

[1] The Hartford Financial Services Group, Inc. appears to be a misnamed party.  The policies at issue in this action are policies issued by Hartford Accident and Indemnity Company and Hartford Fire Insurance Company.

ECF No. 237; and a Motion for Partial Summary Judgment filed by
Property & Casualty Insurance Guaranty Corporation (PCIGC), ECF
No. 239.[2]  The motions are all ripe.  Upon review of the filings
and the applicable law, the Court determines that no hearing is
necessary, Local Rule 105.6, and that: (1) WECCO's motion to
certify questions of law will be denied; (2) Certain Insurer's
motion for partial summary judgment will be granted; (3) WECCO's
motion to strike will be denied; (4) the motion for voluntary
dismissal will be granted; and (5) PCIGC's motion for partial
summary judgment will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action involves an insurance coverage dispute between
WECCO - a company which for decades engaged in the business of
handling, installing, disturbing, removing, and selling
asbestos-containing insulation materials - and several of its
insurers.  Certain Insurers issued policies for WECCO between
November 19, 1972, and April 1, 1983, a time period which
Certain Insurers assert was after WECCO ceased selling or
installing asbestos-containing products.  This action already
has a long procedural history and one that has been entangled

---

[2] Also pending is a motion to seal certain materials submitted by
Certain Insurers.  ECF No. 230.  That motion will be granted for
good cause shown as the materials in question implicate the
attorney client privilege or contain confidential and
proprietary business information.

with a parallel action that is currently resting in the Superior Court of the District of Columbia.  The Walter E. Campbell Co. v. Gen. Ins. Co. of Am., Civ. No. 13-109 (D.C.) (the D.C. Action).  A brief review of the procedural history relevant to the pending motions follows.  A more detailed account of the procedural history of this action and the D.C. Action was provided in this Court's previous opinions dated June 11, 2013, and January 16, 2014.  ECF Nos. 131 and 146.

This action was filed in this Court by General Insurance, one of WECCO's insurers, on November 9, 2012.  Two months later, on January 7, 2013, WECCO filed the parallel action in the Superior Court of the District of Columbia raising essentially the same issues as raised here.  The D.C. Action was subsequently removed to the United States District Court for the District of Columbia, remanded back to the Superior Court, removed again, and remanded again.  On September 12, 2014, the Superior Court granted Certain Insurers' motion to stay that action in light of the pendency of this action.

As the D.C. Action bounced back and forth, WECCO has made repeated efforts to prevent the resolution of the dispute between the parties from taking place in this Court.  WECCO moved to realign the parties so that this case could be dismissed for lack of jurisdiction, ECF No. 40; asked this Court to abstain from the exercise of its jurisdiction, ECF No. 104;

and, in the pending motion to certify questions of law, ECF No. 219, asked this Court to have the Maryland Court of Appeals, instead of this Court, decide the central issues in this dispute.  In its supplement to the motion to certify, ECF No. 238, WECCO again prays, as an alternative remedy to certification of questions of law to the Maryland Court of Appeals, that this Court stay this action in deference to the D.C. Action.

The motivation behind WECCO's persistence is quite clear and has been the subject of commentary by both this Court and the Superior Court for the District of Columbia.  As explained below, there is binding precedent in the Fourth Circuit on the two critical issues in this dispute – precedent that is unfavorable to WECCO's position on both issues – and, by seeking another forum, WECCO hopes to avoid the application of that precedent.  In all fairness, both courts have also recognized that General Insurance engaged in its own forum shopping, electing to file its action in this Court to take advantage of that favorable Fourth Circuit precedent, as opposed to filing in a Maryland state court where that precedent would not be binding.

At one point in this action, WECCO also expressed some uncertainty, real or feigned, as to whether Maryland law should apply to this dispute.  In support of its earlier maneuvers to

have this dispute resolved in the District of Columbia courts, WECCO suggested that "the law of the District of Columbia applies to some or all of the issues in this dispute." ECF No. 104-1 at 15. In response to a previous motion for partial summary judgment filed by Certain Insurers, ECF No. 200, WECCO opposed the motion in part on the ground that Certain Insurers had submitted insufficient evidence to support the conclusion that Maryland law applied to the policies at issue. ECF No. 211 at 11-12. On June 11, 2014, this Court denied the previous motion for partial summary judgment as premature and permitted three months of limited discovery concerning choice of law issues. ECF No. 213. That discovery appears to have confirmed what was suspected all along – that Maryland law applies to this dispute – as WECCO makes no further mention of any unsettled choice of law issues in its motion to certify questions of law to the Maryland Court of Appeals.

In opposing Certain Insurers' previous motion for partial summary judgment, WECCO also challenged the completeness of insurance policies submitted with the motion. Accordingly, in its Order of June 11, 2014, the Court also permitted discovery on that issue during the three month discovery period. WECCO has renewed its purported concerns about the completeness of the policies in opposing the current summary judgment motions. The completeness of the policies is also one of the primary issues

5

raised in WECCO's motion to strike the materials submitted in support of Certain Insurers' renewed motion for partial summary judgment.

Certain Insurers' renewed motion for partial summary judgment is substantially the same as the previous motion that was denied as premature.  In this motion, Certain Insurers seek general declarations concerning the law that governs the interpretation of the policies at issue, the scope of the "completed operations hazard" provisions contained in the policies, and the resolution of which party bears the burden of proving that a claim falls in or out of the scope of those provisions.  In addition, Certain Insurers seek a declaration that the completed operations hazard provisions in their policies apply to the claims raised in two specific suits: Emiline T. Good, P.R. of the Estate of Paul Good (dec.) v. The Walter E. Campbell Company, Inc., et al, No. 24X11000424 (Baltimore City Cir. Ct.) (the Good claim) and Evelyn Cunningham, Surviving Spouse and Personal Representative of the Estate of Joseph A. Cunningham (dec.), et al. v. The Walter E. Campbell Company, Inc., et al., No. 24X12000283 (Baltimore City Cir. Ct.) (the Cunningham claim).  The claims against WECCO in these actions were settled in 2014.

Third Party Defendant PCIGC has also filed a motion for partial summary judgment.  ECF No. 239.  PCIGC is a creature of

the Maryland General Assembly and is assigned limited liability in the event of the insolvency of certain types of insurers. In its motion, PCIGC is seeking a declaration regarding the scope of covered claims for which it has potential liability due to the insolvency of two particular insurance companies, Centennial Insurance Company and American Mutual Insurance Company.

The last significant development relative to the pending motions is that a settlement was reached between General Insurance and WECCO as to all claims between those two parties. On the basis of that settlement, WECCO and General Insurance filed a joint motion to dismiss the claims that they have asserted against each other. ECF No. 237. While the remaining Certain Insurers did not oppose that motion, they did file a response requesting that the dismissal be subject to certain conditions. ECF No. 240.

## II. MOTION TO CERTIFY QUESTIONS OF LAW

There are two issues of insurance policy interpretation that are at the heart of this coverage dispute. The first relates to the manner in which coverage is allocated between multiple insurers that had policies in place during different periods of time (the Allocation Issue). WECCO advocates for an "all sums" rule, under which each insurer is independently obligated to indemnify the insured, in full, up to that insurer's policy limits. Under that rule, the insured can be

indemnified up to the full limits of any triggered policy and then, at some later date, the indemnification expenses are apportioned among the solvent and available insurers that issued the triggered policies.  Under the alternative "pro rata" rule, the obligation to indemnify is prorated among all insurers based upon their time on the risk.  In a 2002 opinion in an asbestos-related insurance dispute similar in all relevant aspects to this dispute, the Maryland Court of Special Appeals adopted the pro rata rule.  Mayor and City Council of Baltimore v. Utica Mut. Ins. Co., 802 A.2d 1070 (Md. Ct. Spec. App. 2002).  Two years later, in In Re: The Wallace & Gale Co., the Fourth Circuit held that the pro rata rule is the law of Maryland in light of the Maryland Court of Special Appeals' decision in Utica Mutual.  385 F.3d 820, 830 (4th Cir. 2004).

The second issue arises out of clauses in the Certain Insurers' policies that provide separate and distinct coverage for "completed operations hazards."  In contrast to the coverage for "operations" which was subject only to "each occurrence" limits, coverage for bodily injury included within the completed operations hazards are subject to an aggregate limit.  The issue then becomes, what injuries fall within the completed operations hazard? (the Completed Operations Issue).

WECCO takes the view that this aggregate limit applies only when a claimant's exposure to asbestos occurred after WECCO

completed its insulation installation or removal work at a particular jobsite.  Under its view, if a claimant was exposed to asbestos during WECCO's operations, the claim would remain an operations claim even if the specific actual bodily injury was not manifested until after the operations were completed.  The result under this view, in practical terms most relevant here, is that claims under insurance policies that did not come into effect until after the completion of all WECCO asbestos operations would be considered operations claims and not completed operations hazard claims.  Thus, those claims under the post-completion policies would not be subject to the aggregate limit in those policies.

Certain Insurers urge a different interpretation – an interpretation that has previously been adopted by this Court in an opinion written by Judge Peter Messitte:

> If a claimant's initial exposure occurred while [the insured] was still conducting operations, policies in effect at that time will not be subject to any aggregate limit.  If, however, initial exposure is shown to have occurred after operations were concluded or, if exposure that began during operations continued after operations were complete, then the aggregate limits of any policy that came into effect after operations were complete will apply.  Where a given claimant falls within this framework will have to be considered on a case-by-case basis.

In re Wallace & Gale Co., 275 B.R. 223, 241 (D. Md. 2002) (emphasis added), vacated in part on other grounds, 284 B.R. 557 (D. Md. 2002).

It has been noted by Judge Andre Davis, then of this Court, that the above quoted discussion of "exposure" that occurs during operations or continues to occur after operations is not a clear as it could be. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa v. Porter Hayden Co., 331 B.R. 652, 667 n.20 (D. Md. 2005) (Porter Hayden I). Judge Davis suggests that "[i]t would have been more clear to refer to 'injury' that occurs or continues to occur after operations were complete." Id. Judge Davis then pointed to other language in Judge Messitte's opinion confirming that it was "injury" that was meant:

> "It remains true that asbestos-related injury can occur at any time from exposure onward and that it cannot be said with certainty when or to what extent it actually occurs. But whatever injury — theoretical or real — is assumed to have occurred after Wallace and Gale's operations were completed will always — by definition — be covered by the completed operations clause. The injury occurs after operations were completed. Nor does it matter whether an injury is viewed as occurring both upon initial exposure before operations are completed as well as thereafter. The portion of the injury extending beyond completion would still, by definition, occur post-operations and thus remain subject to the completed operations hazard aggregate limit.
>
> By the same token — to the extent that injuries, beginning with exposure, may be considered as occurring before operations were completed they would, by definition, be excluded from the completed operations clause. There would be no aggregate limit under the policies then in effect."

Id. (quoting In re The Wallace & Gale Co., 275 B.R. at 238).

Judge Messitte's opinion in Wallace & Gale was affirmed by
the Fourth Circuit.  In re Wallace & Gale Co., 385 F.3d 820 (4th
Cir. 2004).  WECCO attempts to argue that the Fourth Circuit
affirmed Judge Messitte's decision as to the result but not as
to the reasoning, suggesting that the Fourth Circuit focused
entirely on "exposure" to asbestos, as opposed to injury.  ECF
No. 222 at 14-17.  WECCO proffers that, unlike the decision from
this Court, the Fourth Circuit opinion, "does not say, as
[Certain Insurers] contend, that the aggregate limits of
liability would apply if a plaintiff's only exposure is to the
insured's 'operations' that pre-date the inception dates of
[Certain Insurers's] policies."  Id. at 17.  WECCO then argues
that, because this Court is not bound by Judge Messitte's
opinion in Wallace & Gale or Judge Davis's opinion in Porter
Hayden I, but only by the Fourth Circuit's decision in Wallace &
Gale, that this Court is now free, in the instant case, to
ignore its prior two decisions, at least as to the
interpretation of the Completed Operations Issue.

The simple answer to that argument is that one of the
outcomes of this Court's decision in Wallace & Gale was the
following declaration: "Policies in effect wholly after Wallace
& Gale completed installing asbestos-containing materials shall
be subject to aggregate limits as set forth in the policies."
275 B.R. at 250.  The Fourth Circuit, when it held that the

"orders of the district court appealed from are accordingly AFFIRMED," 385 F.3d at 836, clearly understood the substance and import of the orders it was affirming.  Immediately after quoting the language above[3] as the summary of the district court's holding as to the Completed Operations Issue, the Fourth Circuit declared: "[a]s a result, the insurers who issued general liability policies to Wallace & Gale for time periods wholly after Wallace & Gale completed its asbestos installation work will only be liable to the extent of the aggregate limit contained in the policy."  Id. at 826 (citing 275 B.R. at 250) (emphasis added).  This Court finds the Fourth Circuit's opinion wholly in accord both in result and in reasoning with the decision issued by this Court.

    Thus, while WECCO has certainly demonstrated persistence, there is no merit, whatsoever, to its request for certification of questions of law to the Maryland Court of Appeals.  As noted above, in Wallace & Gale, the Fourth Circuit addressed and resolved these same two legal issues in a near identical context.  As to the Allocation Issue, the Fourth Circuit held that the pro rata rule is the law of Maryland following the Maryland Court of Special Appeals' Utica Mutual decision.  385 F.3d at 830.  Noting that a federal court can depart from a

---

[3] Supra at 9 (paragraph beginning, "If a claimant's initial exposure . . .").

State intermediate appellate decision only if "convinced" that the State's highest court would not follow that decision, the court concluded that it was not so convinced, rejecting the same arguments that WECCO makes here.  Id. at 831-32.  On the Completed Operations Issue, the Fourth Circuit affirmed the decision of this Court which adopted the interpretation now urged by Certain Insurers.  Id. at 833.

Significantly, in affirming this Court's resolution of these two issues in Wallace & Gale, the Fourth Circuit rejected the urging of the insured to certify these same questions to the Maryland Court of Appeals.  Id. at 836 n.3.  Judge Davis, when presented one year later with an invitation to certify these same two questions to the Maryland Court of Appeals, concluded that "it would be an abuse of discretion for this court to certify issues of state law to the Maryland Court of Appeals that the Fourth Circuit specifically declined to certify in [Wallace & Gale]."  Porter Hayden I, 331 B.R. at 658 n.8.  The Court finds it would still be an abuse of discretion to do so.

WECCO's alternative remedy suggested in its "Supplemental Brief" has even less merit.  WECCO posits that, "because General [Insurance], the forum-shopping plaintiff that originally sought to avoid the jurisdiction of the Maryland state courts, is no longer a party to the dispute, and because the exclusively state law claims pending would be more completely addressed in a state

court . . . [i]n the alternative [to certification], this Court should stay any further proceedings in this case and defer to the jurisdiction of the Superior Court for the District of Columbia in which a parallel and nearly identical action is pending."  ECF No. 238-1 at 8.  Aside from the irony of WECCO making this argument by casting General Insurance as a "forum shopping plaintiff," this Court has already rejected this precise alternative, concluding that "[i]t is difficult to see how it is more efficient for a D.C. court to resolve matters of Maryland law which WECCO asserts D.C. courts have never reached, than for this Court to resolve issues it has previously confronted and addressed."  ECF No. 146 at 8.  This Court also noted, that "the Fourth Circuit has recognized that a particular state's interests are 'better served by having the coverage issues decided by a federal court sitting in [that state], rather than in a state court sitting in [a different state].'"  Id. at 8 n.6 (quoting Great Am. Ins. Co. v. Gross, 468 F.3d 199, 209 (4th Cir. 2006)).

## III. INSURERS' MOTION FOR PARTIAL SUMMARY JUDGMENT / WECCO's MOTION TO STRIKE

In their motion for partial summary judgment, Certain Insurers seek the following declarations:

> (1) Maryland law governs the interpretation of the insurance policies issued or allegedly issued to WECCO by Certain Insurers;

14

(2) Bodily injury that occurs during an insurer's
policy period, and that arises from an operation that
concluded prior to the inception of the policy period,
falls within the "completed operations hazard" of that
policy and therefore is subject to the aggregate
limits of each such policy;

(3) To avoid the application of the aggregate limit of
any particular policy, WECCO bears the burden of
proving that the bodily injury that occurred during
that policy's policy period arose from asbestos
exposure during a WECCO operation that was ongoing
during such policy period; and

(4) The bodily injuries alleged in the Good claim and
the Cunningham claim are subject to the aggregate
limits of Certain Insurers' policies.

ECF No. 220 at 1-2.  As to the first declaration, WECCO has

apparently now conceded that Maryland law applies to the

policies at issue in that WECCO failed to make any arguments

regarding choice of law in its opposition and affirmatively

sought certification of the questions at issue to the Maryland

Court of Appeals.

As to the remaining three declarations, the legal

underpinning of each rests on the resolution of the Completed

Operation Issue.  In opposing Certain Insurers' motion for

partial summary judgment, WECCO repeats all of its arguments as

to why this Court's rulings on that issue in Wallace & Gale and

Porter Hayden I were wrongly reached and how the Fourth

Circuit's resolution of the issue in Wallace & Gale is somehow

different than this Court's resolution.  For the reasons stated

above, this Court rejects those arguments and finds the Fourth

Circuit's decision in _Wallace & Gale_ both binding on this issue and in line with the interpretation urged by Certain Insurers in their motion.

In addition to its unsuccessful legal assault, WECCO also challenges the factual basis for Certain Insurers' motion.  Much of this same challenge is advanced in WECCO's motion to strike, ECF No. 223, and it falls into three main categories.  First, WECCO challenges the completeness and authenticity of the policy materials submitted with the summary judgment motion.  Second, WECCO challenges the admissibility of evidence offered to establish the time at which WECCO stopped selling or installing materials containing asbestos.  Third, WECCO challenges the submission of materials from the _Good_ and _Cunningham_ litigation. The Court finds each of these challenges to be wholly without merit.

As to the materials submitted by Certain Insurers that relate to the terms of their respected policies, WECCO argues that those materials are not properly authenticated and contain inadmissible hearsay.  Certain Insurers respond that the policy documents are authenticated as "ancient documents" under Rule 901(a)(8) of the Federal Rules of Evidence.  To be authenticated under that provision, a document must be at least 20 years old when it is offered, must have been found in a place where, if authentic, it would likely have been located, and is in a

condition that creates no suspicion about its authenticity.
Fed. R. Evid. 901(a)(8).  Certain Insurers also contend that
these documents are excepted from the hearsay rule under Rule
803(16) which excepts "statement[s] in a document that is at
least 20 years old and whose authenticity is established."  Fed.
R. Evid. 803(16).

The policy documents submitted by Certain Insurers clearly
fall within these rules.  They are undeniably more than 20 years
old and, in fact, WECCO alleges in its Third Party Complaint
that these policies are more than 20 years old.  See, e.g., ECF
No. 157 ¶ 29 (alleging that U.S. Fire issued a policy covering
the period from May 1, 1975, to April 1, 1976).  No policy at
issue was written after 1985.  See id. ¶ 22.

The policy documentation was also found where it likely
would have been found if authentic.  For example, as to the U.S.
Fire policy, Certain Insurers presented the affidavit of Michael
Stacchi, a Claims Manager for the RiverStone Group (RiverStone),
to explain the search that was conducted for policy documents.
ECF No. 220-28.  RiverStone acts as the claims administrator on
behalf of U.S. Fire and Stacchi is the person primarily in
charge of handling asbestos claims against WECCO for U.S. Fire.
Id. ¶¶ 3, 4.  He submitted with his affidavit policy documents
"copied from the business records of US Fire concerning WECCO,
which are currently in the custody of RiverStone" and he avers

that those documents "constitute the best and most complete
information concerning the terms and limits of the WECCO Primary
Policy available from US Fire's business records."   Id. ¶ 7.

In addition, U.S. Fire's corporate designee, Craig Brown,
who is an employee of RiverStone, described the multiple
searches conducted for policy documents.   ECF No. 225 (Brown
Dep.).   He explained that the policy documents produced are a
"reconstruction of the policy," generated from the information
contained on the declaration page for the policy.   Id. at 47.
Brown also explained that the original U.S. Fire policy would be
in WECCO's possession.   Id. at 48.   This is typical of all of
the policies at issue, both as to the possession of the
originals and their "reconstruction" by Certain Insurers.   See
ECF No. 225-1 at 52-55 (Dep. of Lawrence Farber explaining, in
reference to The Hartford policy, that, while the original
policy belongs to the insured, the insurer maintains the
declaration page and non-form endorsements and reconstructs the
policy by assembling the forms identified on the declaration
page).   Brown further testified that requests were made of WECCO
and its broker for its copies of the policies, Brown Dep. at 49,
but, apparently, those requests did not result in the production
of any policies by WECCO.

As to any suspicion as to their authenticity, WECCO
proffers no substantive argument.   While it complains that the

18

produced policies are incomplete, it has identified no material terms of the policies that it believes might be missing.  As noted, WECCO has produced no policy documents of its own of any kind and has acknowledged that it has no copies of the policies. See ECF No. 222 at 10 (complaining that Certain Insurers "submitted an incomplete record of the policies at issue (and which [WECCO] itself does not have)").  Certain Insurers have made the reasonable observation that, if the policies produced by the insurers are not sufficient to establish the terms of the policies, than WECCO cannot meet its burden to establish any coverage at all.  In response to that observation, WECCO protests that it has no burden at this stage in the litigation to prove any element of its claims.  While that may or may not be true, WECCO certainly has the burden in challenging the admissibility of the proffered documents to offer some reason or basis why it believes that the copies of the policies submitted by Certain Insurers materially differ from the originals which it once had but did not retain.  See Tyson v. Jones & Laughlin Steel Corp., 958 F.2d 756, 761 (7th Cir. 1992) (noting "it is the opponent of the evidence who bears the burden of showing that a genuine issue of authenticity exists").

Perhaps of most significance, it is abundantly clear that this action has never been about the content or language of the policies.  There has never been a dispute that each of the

policies in question included a "completed operations hazard"
provision subject to aggregated limits.  Instead, the dispute
has been over the legal interpretation of that provision.  <u>See</u>
ECF No. 157, WECCO's Third Party Complaint, Counterclaim, and
Cross-Claims ¶¶ 41, 46-47 (describing the dispute between WECCO
and its insurers as relating to the scope of the completed
operations hazard provisions <u>in</u> the policies, not as to whether
the policies contained such provisions).  Nor has WECCO has ever
presented any substantive argument that the particular language
used in the completed operations hazard provisions in the
Certain Insurers' policies somehow differed in any material way
from the language in the provisions interpreted in <u>Wallace &</u>
<u>Gale</u> or <u>Porter Hayden I</u>.

The second category of challenged materials, i.e., those
related to the date on which WECCO stopped selling and
installing asbestos-containing materials, was submitted through
the affidavit of Harvey Lee.  ECF No. 220-2.  Lee is an attorney
representing St. Paul and he attaches to his affidavit
transcripts of depositions of WECCO employees or former-WECCO
employees Michael Gibbons, Ernest Whetzel, John Crumit, and
William Stonebraker, taken in various underlying asbestos
lawsuits.  Gibbons was an officer of WECCO from at least August
1995 through November 2011, and testified as WECCO's president
and/or corporate designee in the three depositions submitted.

ECF Nos. 220-7, 220-11 and 220-12.  In each deposition, Gibbons

testified that, by the time he started working for WECCO in

1974, WECCO had stopped selling and installing asbestos

products.  See, e.g., 5/22/06 Dep. at 76, ECF No. 220-11.

Whetzel and Crumit are former employees of WECCO who were

involved in the decision to stop selling asbestos-containing

products and the implementation of that decision.  Whetzel

testified that at some point in 1971, based on overwhelming

evidence that asbestos was hazardous, he sent out a letter to

WECCO customers that WECCO was discontinuing selling asbestos-

containing products and that, within three or four months of the

sending of that letter, all sales of those products were phased

out and "everything had to be asbestos-free."  3/6/96 Dep. at 5,

10-11, ECF No. 220-8.  Crumit testified that, on his order,

asbestos products were removed from the WECCO warehouse "in the

early '70s."  11/17/88 Dep. at 177, ECF No. 220-10.  In a March

31, 2000, letter from WECCO's counsel to St. Paul, WECCO's

counsel represented that Whetzel and Crumit were deceased.  ECF

No. 233-1.  Stonebraker was employed by WECCO from 1959 to 1988

and WECCO's counsel opined in his March 31, 2000, letter that

Stonebraker was, to his knowledge, the only officer or director

of WECCO that was still alive at that time who had worked for

WECCO prior to 1972.  Id.  Stonebraker testified that WECCO took

the asbestos out of its products sometime before 1972.  2/29/00 Dep. at 37, ECF No. 220-9.

WECCO argues that these deposition transcripts are both unauthenticated and contain inadmissible hearsay.  On the issue of authentication, deposition transcripts are self-authenticating by virtue of the reporter's certificate of authenticity.  Deakins v. Pack, 957 F. Supp. 2d 703, 754 (S.D. W. Va. 2013).  As to WECCO's hearsay objections, at least as to the testimony of Gibbons and Stonebraker, that testimony is admissible as admissions of a party-opponent under Fed. R. Evid. 801(d)(2)(A)-(D).  WECCO does not offer any meaningful challenge to the conclusion that Stonebraker's and Gibbons' statements constitute admissions of a party-opponent, making no reply, whatsoever, as to the testimony of Stonebraker and, as to Gibbons, suggesting only that his testimony is "inadmissible hearsay because Certain Insurers have failed to demonstrate that Mr. Gibbons is unavailable to testify at deposition in this matter."  ECF No. 236 at 5 n.5.[4]  The unavailability of the declarant as a witness, however, is not required for admissibility under Rule 801(d)(2).  Globe Savings Bank, F.S.B. v. U.S., 61 Fed. Cl. 91, 94-95 (2004).

---

[4] Remarkably, WECCO also argues that "[l]ikewise, Certain Insurers cannot demonstrate that Messrs. Whetzel and Crumit are unavailable," despite the fact that its own counsel represented in 2000 that they were deceased.

As to Whetzel and Crumit, Certain Insurers argue that their deposition testimony is admissible under the residual exception to the hearsay rule set out in Rule 807 of the Federal Rules of Evidence.  The Court need not resolve the admissibility of their deposition testimony at this time, however, as the testimony of Gibbons and Stonebraker more than adequately establishes that WECCO had ceased the sale or installation of asbestos products by 1972.  The Court also notes that, just as on the issue of what law governs the policies and any questions concerning the content of the policies, there is no real dispute as to when WECCO stopped using asbestos products.  Not only has WECCO repeatedly asserted in litigation that it stopped using those products by 1972, it made similar representations when applying for the insurance policies at issue here.  See, e.g., Application for Umbrella Liability Policy, The Harford, ECF No. 233-2 at 3 (indicating that WECCO has discontinued "materials containing asbestos fiber").

The third category of challenged exhibits consists of filings in the Good and Cunningham litigation which Certain Insurers submitted through Lee for the purpose of establishing that any exposure to WECCO products experienced by Mr. Good or Mr. Cunningham occurred prior to the inception of any of the insurance policies at issue here.  As to Mr. Good, Certain Insurers submit his answers to interrogatories in which he

states that his exposure to WECCO products was limited to his work on a particular jobsite, "Jefferson Plaza in approximately 1969 - 1970," ECF No. 220-14 at 91, as well as a pleading filed by WECCO stating that Jefferson Plaza was the only jobsite where Mr. Good alleged he was exposed to WECCO products.  ECF No. 220-22 at 4-5, 8 (a pleading opposing consolidation of Mr. Good's claims in a particular trial group).  In addition, Lee submits deposition testimony from two of Mr. Good's alleged coworkers testifying about Mr. Good's presence on the Jefferson Plaza project.  ECF Nos. 220-15 (6/27/13 Dep. of Waller Jenkins) and 220-16 (6/25/13 Dep. of G. Wayne Mullin).  As to Mr. Cunningham, Lee submitted a pleading filed by Mr. Cunningham's wife and surviving children clarifying that the only exposure he had to WECCO "occurred in 1963 and 1965 into 1966" and stating that this "is consistent with the evidence adduced during discovery in this case."  ECF No. 220-18 (Pls.' Amendment of Inactive Civil Dkt. Information Form dated 3/28/14).  With that pleading, Lee also attached deposition testimony from three of Cunningham's coworkers relating to Mr. Cunningham having worked at one project in D.C. in 1963 and at another in 1965 and 1966. ECF Nos. 220-19 (10/17/13 Dep. of Don Hockman); 220-20 (9/24/13 Dep. of Eugene Long); 220-21 (10/30/13 Dep. of Donald Burroughs).

WECCO offers the same authentication and hearsay objections to these documents.  The depositions, as stated above, are authenticated by the stenographer's certification.  The Court is satisfied that the other pleadings are authenticated by the electronic-filing stamp as being pleadings in these underlying cases.[5]  In addition, if they are not the authentic pleadings that were filed in the underlying cases, WECCO is certainly in the position to challenge that authenticity having been a party in those actions.

As for the hearsay objections, Certain Insurers note that the depositions and the other pleadings are not offered for the truth of the matter asserted, i.e., that Mr. Good and Mr. Cunningham were actually exposed to WECCO products on certain dates, but, instead, are offered "to show the dates on which Messrs. Good and Cunningham were _allegedly_ exposed to asbestos-containing materials that were _allegedly_ supplied and installed

---

[5] WECCO makes the somewhat misguided argument that Certain Insurers are advancing "the remarkable proposition that _all_ documents filed with a court are automatically deemed authentic. Were that the rule, then authentication would cease to exist as a threshold issue for admissibility because _all_ exhibits are filed with the court at the summary judgment stage."  ECF No. 236 at 3-4.  Here, authenticity simply means that this is the document that was filed in the underlying action.  If, for example, a deed was filed in one action and a copy of that deed with a filing stamp was submitted in a second action, the authentication arising from the filing stamp simply authenticates that this is the document that was filed in the prior proceeding.  It does not authenticate its status as a deed.

by WECCO." ECF No. 233 at 27. In its reply, WECCO makes no
response to this argument. As for the pleading filed by WECCO
in the Good action, that constitutes an admission of a party
opponent.

Having determined the admissibility of the challenged
exhibits, the resolution of Certain Insurers' entitlement to the
remaining requested declarations is straightforward. Given that
WECCO has proffered no material difference between the completed
operations hazard provisions in the policies at issue here and
those at issue in Wallace & Gale and Porter Hayden I,
entitlement to the second prayed-for declaration regarding the
completed operations hazard is determined by this Court's
decisions in Wallace & Gale and Porter Hayden I and the Fourth
Circuit's decision in Wallace & Gale. That declaration will
issue.

The resolution of Certain Insurers' entitlement to the
third prayed-for declaration, i.e., that WECCO bears the burden
of establishing an ongoing WECCO operation at the time of
injury, is guided by this Court's decision in National Union
Fire Insurance Company of Pittsburgh v. Porter Hayden Company,
Civ. No. 03-3408, 2012 WL 734170 (D. Md. Mar. 6, 2012) (Porter
Hayden II). In Porter Hayden II, the insured sought a
declaration that the insurer bears the burden of demonstrating
that a claim falls under the completed operations hazard and

26

thus is subject to the aggregate limit on liability.  In

rejecting that position, Judge Catherine Blake began by noting

that, under Maryland law, the insured "'has the burden of

proving every fact essential to his or her right to recover.'"

Id. at *2 (quoting In re Wallace & Gale, 275 B.R. at 230).

While insurers bear the burden of establishing exclusions to

coverage or otherwise limiting coverage, Judge Blake found that

"[c]lassification of a claim [] is a matter of showing

entitlement to coverage – not a defense or limitation thereto."

Id.  Accordingly, this Court held that:

> Insofar as Porter Hayden argues that it was conducting
> operations that resulted in the release of asbestos
> fibers . . . during the relevant policy periods, then
> the burden is on Porter Hayden to prove that.  Porter
> Hayden, of course, is in the best position to make
> this showing.  The court will not require the Insurers
> to demonstrate the absence of ongoing operations
> during the policy periods.

Id.  For the same reason, this Court finds that, if WECCO

contends that it was conducting operations involving asbestos at

the time of a particular injury and compensation for that injury

falls outside of the aggregate limit, then WECCO bears the

burden of establishing that operations were ongoing at the time.

WECCO does not directly challenge that conclusion.

Instead, it attempts to shift the focus to an issue not raised

in Certain Insurers' motion, i.e., whether the aggregate limits

of the policies in question have actually been exhausted.  WECCO

27

maintains that "Certain Insurers have the burden to prove the defense of 'exhaustion' of the aggregate limits of liability if they seek to avoid payment on this basis." ECF No. 222 at 28. While that assignment of the burden on exhaustion may be correct, where that burden falls is not germane to Certain Insurers' motion.  The declaration they seek relates only to the burden to show a claim does not count towards the aggregate limit, not whether previous claims have exhausted that limit.

As to the declaration that the injuries alleged in the Good and Cunningham claims are subject to the aggregate limits of Certain Insurers' policies, that determination naturally follows from the conclusion that Mr. Good's and Mr. Cunningham's alleged exposure to asbestos-containing WECCO products was at least several years prior to the issuance of any of the Certain Insurers' policies.  Furthermore, any bodily injuries suffered by these men during the effective dates of policies issued by Certain Insurers were suffered after WECCO ceased any asbestos-related activities.  Thus, the claims of Messrs. Good and Cunningham fall within the completed operations hazard of those policies and are subject to the aggregate limits.

Aside from its evidentiary challenges, WECCO makes no argument regarding this requested declaration.  Instead, it suggests that the Court should "decline Certain Insurers' request to issue advisory rulings on [these] coverage questions

. . . [as t]here is no present 'controversy' concerning those cases for the Court to resolve." ECF No. 222 at 29. To the contrary, the <u>Good</u> and <u>Cunningham</u> cases are exemplars of precisely the type of cases at the center of the coverage controversy raised in this action.

For these reasons, Certain Insurers' Motion for Partial Summary Judgment will be granted in its entirety.

## IV. PCIGC's MOTION FOR PARTIAL SUMMARY JUDGMENT

As noted above, PCIGC is a creature of the Maryland General Assembly and is assigned limited liability as to certain "covered claims" in the event of the insolvency of certain types of insurers. <u>See</u> Md. Code Ann., Ins. § 9-301 <u>et seq.</u> To be a covered claim, it must, <u>inter alia</u>, be presented to PCIGC on or before the last date fixed for the filing of claims in the domiciliary delinquency proceeding. <u>Id.</u> § 9-301(d)(1)(ii). Furthermore, covered claims do not include claims "filed with [PCIGC] after the earlier of: 1. 18 months after the date of the order of liquidation; or 2. the filing date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer." <u>Id.</u> § 9-30(d)(4)(1). As explained by the Maryland Court of Appeals, the filing deadline for covered claims:

> represents a legislative determination that PCIGC is
> not liable for every claim that could be brought
> against the insurance carrier had it not become

> insolvent.  The deadline makes it possible for PCIGC
> to reasonably anticipate its potential liability which
> in turn allows it to participate in the liquidation
> proceedings of the insolvent insurer and assess its
> members accordingly.  The deadline serves the
> important purpose of providing finality to both the
> liquidation proceeding and PCIGC's potential liability
> resulting from the insolvency of an insurance carrier.

Med. Mut. Liab. Ins. Soc'y of Md. v. Goldstein, 879 A.2d 1025,

1033 (Md. 2005).

WECCO has alleged that PCIGC is liable for the insolvencies

of Centennial Insurance Company (Centennial) and American Mutual

Insurance Company (American Mutual).  Relying on the language

quoted above that limits the class of covered claims, PCIGC is

seeking in its motion a declaration that it is liable for none

of the claims from American Mutual as the bar date for claims

against American Mutual was March 9, 1990, and WECCO provided no

notice of any claims prior to that date.  As to Centennial, that

insurer was liquidated on April 27, 2011, and, accordingly, the

eighteen month claiming period expired on October 27, 2012.

WECCO provided notice of claims to PCIGC both before and after

that October 27, 2012, deadline.  In its motion, PCIGC is only

seeking a declaration of non-coverage as to the claims for which

notice was given after that date.

In opposing this motion, WECCO makes what is perhaps its

most spurious argument thus far in this litigation.  Without

30

challenging any of the pertinent facts,[6] WECCO argues that
applying the statute as it is written, i.e., requiring claims to
be presented on or before the bar date or 18 months after the
order of liquidation in order to be covered claims, somehow
violates equal protection under Article 24 of the Maryland
Declaration of Rights.  WECCO suggests that "PCIGC [is] ask[ing]
this Court to treat similarly situated Asbestos Suit claims
differently with no rational basis to do so."  ECF No. 247 at 6.

Equal protection, of course, is guaranteed to persons, not
claims.  Assuming that WECCO is asserting that the statute that
created PCIGC treats persons with untimely claims differently
than persons with timely claims, the statute would still easily
survive a constitutional challenge.  Because the statute neither
interferes significantly with a fundamental right nor implicates
a suspect classification, it is subject to review under a
"rational basis" level of scrutiny.  Conaway v. Deane, 932 A.2d
571, 603-04 (Md. 2007).  As such, the classification will pass
constitutional muster so long as it is "rationally related to a
legitimate governmental interest."  Murphy v. Edmonds, 601 A.2d
102, 108 (Md. 1992).  The Maryland Court of Appeals in

---

[6] Ever anxious to delay the resolution of this litigation, WECCO
suggests that the Court should defer ruling on this motion to
permit it to conduct discovery without suggesting what discovery
it needs to take.  ECF No. 247 at 8.  The Court notes that the
only factual issue raised in this motion related to claims
submitted by WECCO to PCIGC.

Goldstein, as noted above, has already articulated the legitimate government interest advanced by the statute.

PCIGC's motion for partial summary judgment will be granted.

## V. MOTION FOR VOLUNTARY DISMISSAL OF GENERAL

General Insurance and WECCO entered into a confidential settlement agreement on December 15, 2014, resolving all claims between them in this action and the parallel action in the D.C. Superior Court.  Pursuant to that agreement, General Insurance has or will transfer the settlement amount to the qualified settlement fund established by WECCO.  In exchange, WECCO has: (1) withdrawn all outstanding tenders of claims to General Insurance for defense and indemnity; (2) agreed not to tender any further claims to General Insurance; and (3) agreed that any judgment or award obtained by WECCO against any non-settling insurer shall be automatically reduced by the amount, if any, that a Court determines General Insurance would have been liable to pay that insurer as a result of a contribution claim made by that insurer against General Insurance.  In their joint motion, General Insurance and WECCO are seeking an Order that: (1) all claims by and between General Insurance and WECCO in this action are dismissed with prejudice and without effect on WECCO's claims against the remaining parties; (2) any judgment or award obtained by WECCO against any other insurer shall be

32

automatically reduced by the amount, if any, that a Court determines by judgment General Insurance would have been liable to pay such other insurer(s); and (3) WECCO be substituted for General Insurance as the proper counterclaim defendant in this case.

Certain Insurers responded to the joint motion, indicating that they have no objection to the relief requested so long as WECCO is required to participate, in real time, in the defense and indemnity of WECCO in the Asbestos Claims to the same extent that General Insurance would be obligated to participate under Maryland law and that the Court order WECCO to hold the funds from its settlement with General Insurance in trust and that the settlement funds be used solely for defense and indemnity of Asbestos Claims and be paid in accordance with General Insurance's legal share of defense and indemnity obligations. Certain Insurers further specify that "[c]onsistent with Maryland law, WECCO should pay a pro rata share of defense and indemnity costs as those costs are incurred, just as General [Insurance] would have paid had it remained a party." ECF No. 240. In replying to that response, WECCO continues its protest against the recognition of Maryland's adoption of the pro rata rule and encores its request that this Court certify the question to the Maryland Court of Appeals or stay this action in deference to the D.C. Action.

The Court will grant the motion for voluntary dismissal, as modified by the Certain Insurers' response.

## VI. CONCLUSION

For the above stated reasons, the Court will deny WECCO's motion to certify questions of law to the Maryland Court of Appeals, will deny WECCO's motion to strike, will grant the motions for partial summary judgment filed by Certain Insurers and PCIGC, and will grant the motion for voluntary dismissal filed by General Insurance and WECCO. The Court will also request a joint status report to be submitted within 10 days from this date setting out what remains to be resolved in this action. A separate order will issue.


```
_____/s/_____
```
William M. Nickerson
Senior United States District Judge


DATED: May 26, 2015